# James McCreedy

*v.*

# Margery Mier *et al.*

1. ADMINISTRATION—*administrator's duty as to realty.* An administrator is not, in all respects, a stranger to the real estate left by his intestate. He is required to inventory it, and is made chargeable with so much of the estate of the intestate, real, personal or mixed, as he shall receive; and when the personal estate is insufficient to pay the debts, he is required to procure an order of court, and convert the realty into assets.

2. SAME—*his duty to redeem lands sold.* The statute has authorized an administrator to make redemption of the lands of his intestate from sale on execution or foreclosure of mortgage. Whether or not it is his duty

to exercise this power, must depend upon the circumstances of each case, he being held only to the exercise of a reasonable discretion.

3. In a case where the amount required to redeem was only a little more than one-fourth of the value of the land sold, and he had in his hands personal assets on which he might have raised the amount necessary to redeem, and where the creditors of the estate were willing to furnish the money for such purpose: *Held*, that it was a breach of his duty to neglect to make the redemption, for which he was liable.

4. CHANCERY—*jurisdiction—mal-administration of an estate.* Where the object of a bill in chancery was to charge an administrator of an estate for not properly discharging the duties of his trust, it was held that a court of equity not only had jurisdiction to investigate the question presented, but that adequate relief could only be had in such court. The heirs and creditors were not bound to bring suit upon the administrator's bond, in such a case.

5. SAME—*sufficiency of bill to sustain decree.* In such a case, the heirs and creditors may join in filing the bill; and if it states all the facts necessary to sustain the decree, it will be sufficient, although the bill does not give the true reasons for the relief granted.

6. ADMINISTRATOR—*purchasing property of estate.* It being the duty of an administrator to redeem lands of his intestate when they have been sold at a sacrifice by a sheriff or master, and he can raise the means necessary from assets coming to his hands or offered by creditors, the same principle which forbids him from purchasing lands at a sale under order of court, must also forbid him from purchasing, on his own account, a certificate of purchase given by the sheriff or master on a sale made in the lifetime of the intestate.

7. In this case, the land of the intestate, of the value of $4000, had been sold in his lifetime, on foreclosure of mortgage, for $1118.79, the time of redemption expiring December 6, 1863, except as to creditors. In May, 1863, letters of administration were granted on the estate, and the administrator realized from sale of personalty, on July 16, 1863, $1292.09, in notes, which were subsequently paid. Of this, $584 was allowed to the widow, and claims were allowed against the estate to the amount of $897.79. Some of the creditors offered to redeem the land and pay all the debts, and give the widow and heirs $1500, and take an assignment of the certificate of purchase. The widow consulted with the administrator, who told her that he could do better than this for her. After she had left the State, the administrator procured an assignment of the certificate to a brother, residing in another State, who again assigned the same to a party who procured a deed, and the land was afterwards sold to an innocent purchaser: *Held*, on bill filed by the heirs and creditors, that, whether the administrator purchased for his own or for his brother's benefit, made but little difference, as in either case he acted in defiance of his duty; and

that, in such a case, he was properly chargeable with the value of the land, less what it cost him; and that he was chargeable with interest on the portion going to the creditors from the time the law required him to make his first settlement, and on the sum due the heirs from the expiration of two years from the date of his letters, that being the first time the heirs had a right to call for a distribution.

APPEAL from the Circuit Court of Bureau county; the Hon. EDWIN S. LELAND, Judge, presiding.

Mr. J. I. TAYLOR, and Messrs. BUSHNELL & BULL, for the appellant.

Mr. MILTON T. PETERS and Mr. MILO KENDALL, for the appellees.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

John Stewart died in April, 1863, in Bureau county, intestate, and leaving a wife and minor children. He left personal property valued at $1292, and a farm worth $4000. A mortgage on the latter had been foreclosed, and the land had been sold under the decree for $1118.79. On the 7th of May, 1863, James McCreedy, the appellant herein, was appointed administrator upon Stewart's estate. At that time, he held an interest in the certificate of purchase issued on the master's sale under the foreclosure, amounting to $191.82, which he had acquired before Stewart's death. The time of redemption from the master's sale expired for the estate on the 6th of December, 1863, and for creditors three months thereafter. The personal property had been sold by the administrator July 11, 1863, for $1292.09, and he held the notes, which were subsequently paid. On the 17th of August, 1863, debts had been allowed against the estate to the amount of $897.79, which, added to the specific allowance of $584 to the widow, exceeded the personal assets. Two of the creditors of the estate offered to redeem the land, by having the certificate assigned to them, and to pay the debts of the estate,

32—64TH ILL.

and also the sum of $1500 to the widow and children. She consulted with the administrator, who, as she testifies, advised against such an arrangement, saying he could find some one to redeem, and she would get a larger sum. She left in September for Pennsylvania, taking her children, and did not return until 1865. In October, 1863, the administrator bought the certificate of purchase from the holder, paying therefor $30 more than would have been necessary for redemption. He caused the assignment to be made to his brother, Geo. McCreedy, who lived in Michigan. The latter assigned the certificate, in December, 1863, to one Shearer, who took out the deed, and subsequently sold the land to an innocent purchaser. The administrator settled the estate, leaving a portion of the debts unpaid. In 1870, the bill in this case was filed against him by the widow, heirs and creditors, charging him with mal-administration of his trusts in regard to the land. On the final hearing, the court pronounced a decree against the administrator for the value of the land at the time when the certificate of purchase was assigned to the administrator's brother, less the amount paid for the certificate, with interest to the date of the decree, and directing the proper distribution of the money.

It is objected, at the outset, by counsel for appellant, that if he has been guilty of mal-administration, the remedy should have been sought by a suit upon his official bond. It is further objected that the allegations of the bill do not entitle the complainant to the relief granted.

In regard to the first objection, it is only necessary to say that the object of the bill is to charge the defendant for not properly performing the duties of a trust which he had undertaken; and it not only is proper to ask a court of chancery to investigate that question, but only in that court can adequate relief be granted. As to the second objection, we remark that, while the original and amended bills may not give the true reasons why relief should be granted, they do allege all the facts necessary to sustain the decree.

The chief reliance of counsel for appellant, so far as relates to the merits of the controversy, seems to be upon the theory that the administrator of an estate is a stranger to the realty, and may act in regard to it as a stranger.    It is true, he was so called in *Stone* v. *Wood*, 16 Ill. 180; but this broad language must be construed with reference to the case before the court.    The same remark may be made in reference to subsequent cases cited by appellant's counsel.

It is, however, not correct to say that an administrator stands, in all respects, as a stranger in reference to the real estate of the deceased.    On the contrary, the statute requires him to include it in his inventory; and in the 92d section of the chapter of Wills provides that "administrators shall be chargeable with so much of the estate, whether real, personal, or mixed, or the proceeds thereof, of their testator or intestate, as they, after due and proper diligence, shall recover and receive."    Where the personal estate is deficient, the administrator must procure an order of court, and convert the realty into assets, and, what is most important for our present purpose, the 13th section of the Statute of Judgments and Executions gives to the administrator, as well as to the heir, the right to redeem the land of the deceased sold under execution. Perhaps it has escaped the observation of counsel for appellant that administrators are included in this statute, as it is erroneously said in one of the briefs that the appellant, "if he had had a million, could not have made this redemption."

The statute gives the right to an administrator to redeem. Whether or not it is his duty, must of course depend on the circumstances of each case, and he should only be held to the exercise of a reasonable discretion.    In this case, the amount required to make the redemption was little more than one-fourth the value of the land.    He had in his hands assets belonging to the estate on which he could have raised the money.    The creditors themselves were willing to furnish it. It was, therefore, his duty to redeem.

But the decree in this case does not rest on the mere non-performance of a duty. The administrator pursued a course which was at least constructively fraudulent, regarded in its most favorable aspect. Instead of redeeming for the estate, he bought the certificate of purchase himself, taking an assignment in the name of his brother, living in another State. There is evidence in the record which raises a strong presumption that he bought with his own money, for his own benefit, and used his brother's name only to cloak the transaction; but we regard it as wholly unimportant whether he bought wholly for his own benefit, and with his own means, or not. He was, at any rate, the sole actor. His brother, living in Michigan, knew nothing of the land or the certificate; and if the administrator, as he claims, procured his brother's money, and, having invested it in this certificate, allowed his brother to have all the profits, we do not perceive that it leaves the transaction in a materially different attitude from that it would occupy on the supposition that the administrator bought wholly for his own benefit. In both cases, the administrator is acting in defiance of his official duty; but in one case he puts the profits in his own pocket, and in the other gives them to his brother.

The course pursued by the appellant, in reference to this land, is forbidden by the familiar principles of laws applicable to fiduciary relations. An administrator who procures an order of sale of realty; can not be permitted to become himself a purchaser at the sale. That position would be inconsistent with his fiduciary relations. (*Miles* v. *Wheeler*, 43 Ill. 124). Precisely the same rule governs here. It is the duty of an administrator to redeem land from a sheriff's sale, where it has been sold at a sacrifice, and he has the means in his hands, at least when necessary for the protection of creditors and distributees of the estate. This being his duty, it is plain that the same principle which forbids him to become a purchaser at a sale under order of court, must forbid him to buy, on his own account, a certificate of purchase given by the

sheriff or master on a sale made in the lifetime of the deceased. To allow him to deal with the land in that way, would be to allow him to occupy a position where his interest would clash with his duty, and the law says that shall not be done. If he buys the certificate, all persons interested in the estate have a right to insist that it shall be held for the benefit of the estate, the administrator, of course, being entitled to have the amount advanced by him refunded.

The case before us shows the wisdom of the rule. This administrator, but for the temptation offered him by the prospect of acquiring a title to a farm for about one-quarter of its value, would have doubtless redeemed for the benefit of the estate. The debts would then have been paid in full, and a sum left for distribution among the children. He yielded to the temptation, and now the parties injured have a right to insist that he shall answer for the value of the land, less what he has paid.

It is said, however, that the administrator should not be required to account to the children, whatever may be the rights of the creditors. There is proof tending strongly to show that the widow would have arranged with the creditors for redemption if the administrator had not told her he could do better for her, under which assurance she left the State; but, independently of this evidence, it is apparent that if the administrator had redeemed, the land would have been sold under an order of the court, and he would then have held the surplus as trustee for the heirs. He held the entire assets of the estate in his hands. The heirs had no means of redeeming. By his neglect of this duty, they lost their interest in the land, which could have easily been secured, by an arrangement with the creditors for redemption, if the administrator had not prevented such an arrangement by the course he adopted. Under the circumstances, it is only equitable that the administrator should be required to account not only to the creditors, but to the heirs, as distributees.

There is, however, a minor error in the decree. The court charges the administrator with interest on the whole value of the land, from October 8, 1863. As to the amount payable to the heirs, he should have been charged with interest only from May 7, 1865, when the heirs would first have had the right to call on him for distribution, being two years from the granting of letters of administration. As to the amount payable to the creditors, he should have been charged with interest only from the time when the law required him to make his first settlement, namely: the first term of the county court after the expiration of one year from the granting of administration.

In order that this error may be corrected, the case is remanded; the decree being, to this extent, reversed.

*Reversed in part.*