## ST. PATRICK'S CATHOLIC CHURCH OF STERLING

*v.*

## JOHN DALY.

*Filed at Ottawa January 25, 1886.*

1. RESULTING TRUST—*of the proof required.* To authorize a decree declaring that a priest in charge of a church holds the legal title to certain lots in trust for the church, and divesting him of the same, it must be satisfactorily proved that they were purchased by him for the church, and with funds that equitably belonged to the church.

2. FORMER ADJUDICATION — *remandment with specific directions—as determining the right to an accounting.* Where a decree was reversed by this court, and the cause remanded, with directions to refer it to the master to state an account for moneys expended by the defendant in the purchase and improvement of lots, it was *held,* that this was conclusive of the right to have an account taken.

3. INTEREST—*moneys advanced.* Where a priest has advanced money for the use of his church, he will, under the statute, be allowed the legal rate of interest on the same.

4. CHANCERY—*imposing equitable terms as condition to relief.* Where a party seeks in a court of equity to divest another of the legal title to lots, the court may impose equitable terms on which relief will be granted; and if it appear that the defendant has advanced money for the purchase and improvement of the property, the court, in its decree finding it to belong to the complainant, may properly require the money so advanced to be refunded, with legal interest.

5. SAME—*whether a personal decree proper—as, for moneys advanced by defendant, on bill to establish a resulting trust.* A Catholic priest, before the incorporation of his church, advanced moneys with which to buy and improve lots, and the church after incorporation, by bill in chancery, sought to have a resulting trust declared and enforced. On cross-bill by the defendant seeking to have an accounting in his favor for his advances and its payment, it was *held,* that a decree finding the amount advanced by him and making it a lien on the lots, and ordering their sale for the same, was proper, but in so far as it gave a personal decree against the church for any deficiency, after sale of the lots, and awarding an execution for its collection, it was erroneous, as the church, after incorporation, never assumed any personal liability for the same.

WRIT OF ERROR to the Circuit Court of Whiteside county; the Hon. JOHN V. EUSTACE, Judge, presiding.

Mr. George W. Smith, for the plaintiff in error.

Messrs. Bennett & Green, for the defendant in error.

Mr. Samuel Whipple Gehr, for the Catholic Bishop of Chicago.

Mr. Justice Scott delivered the opinion of the Court:

This case was before this court at a former term, and is reported in 97 Ill. 19. The opinion then delivered contains a sufficiently full statement of the pleadings of both the original bill and the cross-bill, and of the principal facts, to afford an understanding of the case as it now comes before this court. Reference may also be made to the former opinion for a succinct history of the case. The decree that had been rendered by the circuit court was reversed, and the cause re-remanded, with directions that it be referred to the master to state an account, and that each party may, if desired, introduce further proof as to the usages of the church, and as to other questions in the case. Accordingly, after the mandate from this court was sent down, the circuit court, in conformity with directions given, referred the cause to the master in chancery to take and state an account between the parties. Exceptions taken to the master's first report were so far sustained it was, by the court, referred back to the master, with directions to report again as to certain items, and as to pew rents the court held, under the evidence adduced in the case and under the laws of the Catholic church, a pastor is not held accountable for the same; that for similar reasons he is not held accountable for money received for baptismal or marriage services, and that as to the penny collections, under the laws of the church offered in evidence, the pastor is not held accountable for the amount thereof. As respects certain items the master was directed to report the evidence. Under the direction given, the master made a second report, showing

a certain amount due defendant, Daly, for money advanced and expended by him for the benefit of the church of which he was at that time the priest in charge. This last report was corrected in some respects by consent of parties, and in others by the decision of the court, and to the amount found due to defendant by the master, the court added interest at the rate of six per cent per annum. The court found complainant had no right, title or interest in lots 10 and 11, in block 11, and the bill, so far as it relates to these lots, was dismissed for want of equity. It was further decreed complainant is entitled to the following real estate described in the original bill,—that is, lots 1, 2, 3 and 7, in block 12,—subject, however, to the lien thereon, of defendant, Daly, for the amount found to be due to him for money paid out and expended by him for the purchase and improvement of said lots. The court found, on the cross-bill of Daly, there was due him for money laid out and expended by him on behalf of the church for the purchase and improvement of lots 1, 2, 3 and 7, block 12, with interest thereon, the sum of $9819.21, and declared that he should have a lien on all of said lots prior and paramount to any interest of complainant in the same, and decreed that unless the church society, within a certain time fixed, should pay to Daly the amount found to be due to him, said lots be sold, as is usual in case of master's sales, and out of the proceeds he be paid the amount found due to him. It was further ordered and decreed in case the avails of such sales should be insufficient to pay the amount found to be due to Daly, with interest and costs, that the master specify such deficit in his report, and that Daly have execution against St. Patrick's Catholic Church of Sterling for the same. Other matters were found by the court in its decree, and orders and decrees made concerning them, and so far as the same may be necessary to an understanding of the decision to be rendered, they will be stated further on, otherwise not.

No controversy now exists as to lots 8, 9, 10, in block 12. As respects lots 10 and 11, in block 11, west of Broadway, the court found the church had no right, title or interest in them, and accordingly, as to them, dismissed the amended and original bills.   The evidence as to how these lots were purchased, whether by Daly for himself, or for the church, and as to whose money was in fact used to pay for the same, is quite conflicting and in a degree unsatisfactory.   Only one thing may be confidently said as to the evidence in this respect, and that is, it is not so satisfactory as to warrant the court in divesting Daly of the legal title to the lots and placing it in complainant.   Before that can be done it should be satisfactorily proved the property was purchased by Daly for the church, and with funds that equitably belonged to the church.   That has not been done, and the decree as to these particular lots must be permitted to stand.

With that part of the decree which finds lots 1, 2, 3 and 7, in block 12, west of Broadway, belong to the church, of course no fault is found by complainant assigning error on this record.   The complaint is, the property was declared to be subject to the lien of Daly for the amount found to be due to him for money by him expended for the purchase and improvement of said lots.   This question raises the most important inquiry in the case, and the one about which there is the most seeming difficulty.   It is made a point against the present decree, that Daly stood in no position to demand an accounting from the defendant to his cross-bill,—the church society.   It is thought this point was settled against the position taken, by the previous decision of this court when the case was before it at a former term.   The decree was then reversed, and the cause remanded, with directions to refer it to the master to state an account.   That implies it is a case where an account should be taken, otherwise no such directions would have been given.

It will be seen the master's report consists of a great number of items, concerning which the evidence is very unsatisfactory, and is necessarily so in the nature of the case. It would be impracticable for this court, in any reasonable time, to analyze the evidence bearing on each separate item of the account stated. That was the appropriate work of the master, and it seems to have been patiently and carefully done by him. If it shall be found the directions given as to the manner of stating the account are correct, no reason is perceived why the report, as corrected by the court, may not stand. All the corrections made to the report of the master were in favor of complainant in the original bill, except the item of interest, and, barring that item, no complaint is made as to such corrections. As has been seen, the court held, under the evidence adduced as to the laws of the church, the priest in charge is not to be held accountable for penny collections and pew rents, and so directed the master; nor is he to be held liable for fees or offerings given for baptismal or marriage services. No serious complaint is made that the priest in charge was not held to account to the church for such fees for baptismal and marriage services, and it seems to be conceded he may do with them as he pleases. But it is confidently maintained he should have been charged with pew rents collected by him,—certainly with the remainder after his support is deducted. The evidence bearing on this branch of the case consisted of writings of persons learned in the law as to usages of the Catholic church, introduced in evidence, and of the testimony of persons thought to be familiar with such laws and usages. As was said by this court in its former opinion, the usages of the church in this respect are not very definitely proved as to what may be retained by the priest from the funds which may come to his hands. It seems to be conceded by all, the priest in charge is entitled to a decent support out of the incomes from the parish. Perhaps the principal source of income, in this coun-

try, is from pew rents and other collections. It is from these sources he has his support. But it is said by a writer, "whatever comes to him by baptismal, marriage, or at other times, according to pious and laudable customs, are enumerated among his patrimonial goods, the free dominion of which are conceded to him." It seems that whatever is received from such ecclesiastical functions are mere perquisites, which he may spend at his pleasure. They have no connection with his support. That comes, as has been seen, in the United States, mostly from pew rents and other collections. A priest of very large experience testified on behalf of complainant: "The pew rents are supposed to go for the support of the priest, and to pay the necessary expenses of the church." The evidence in the record, it is thought, fully warranted the court in holding, as it did, the priest in charge might retain the pew rents and other collections for his support, and to pay the church expenses, which the evidence shows he did. At least under the evidence found in the present record, this court can not say it was error for the circuit court to rule as it did as to pew rents and penny collections. Conforming, as it did, to the directions of the court, the master's report was properly approved, and the decree upon it in this respect should be permitted to stand.

The master did not, by his second report, allow interest on the amount he found to be due to complainant in the cross-bill, but the court, by its final decree, did allow interest on that amount at the rate of six per cent per annum. That decision is assigned for error. Section 2 of the act entitled "Interest," provides: "Creditors shall be allowed to receive interest at the rate of six per centum per annum on money lent or advanced for the use of another." Here the court found Daly had advanced money for the use of the church or religious society, and no reason is perceived why he may not, under this statute, be allowed the legal rate of interest on money so advanced. The decision might be sus-

6—116 ILL.

tained on the ground complainant is asking relief as to certain property, and the court may impose terms such as may be deemed equitable, on which such relief will be granted. It appears Daly advanced money for the purchase and improvement of the property, and if the property shall be decreed to belong to complainant, equitably, the money should be refunded to him, with interest. In the decision in that respect there is no error.

But the point made against the present decree, that no personal decree should have been rendered against the church corporation for any deficit that may remain after the sale of the property, seems to be well taken. Most, if not all, of the money which it is alleged Daly advanced and expended for the use of the church, was advanced and expended before the corporation had, in fact, any existence. It did not become a corporate body until the year 1876. The present corporation assumed no liability to Daly against the congregation before it became incorporated. The utmost he can claim is a lien upon the property and improvements thereon, which he insists were purchased with his money. The money was not advanced to the corporate body that now exists, and no personal liability exists upon it to refund the advances so made. In this respect the decree is erroneous.

That part of the decree which declares that St. Patrick's Catholic Church shall be liable for any deficiency that remains after the sale of the property, if any, and awards execution for the same, will be reversed in this court, but in all other respects the decree of the circuit court will be affirmed. Each party will be required to pay its own costs in this court.

*Decree affirmed in part and in part reversed.*