PARADINE GALBRAITH et al.

v.

SILAS TRACY et al.

54:27 LRA 350
27 LRA 451
27 LRA 491
28 LRA 86

*Filed at Ottawa October 29, 1894.*

1. PARTNERSHIP—*surviving partner a trustee.* The fiduciary relation of trustee and *cestui que trust* exists between a surviving partner and the representatives of the deceased partner.

2. SAME—*if surviving partner dies, his administrator assumes the trust.* The administrator of the last surviving partner is charged with the duty of completing the settlement, and assumes the same fiduciary relation with respect to the partnership property that his intestate sustained.

3. SAME—*firm real estate is, in equity, personalty.* In equity the real estate of a partnership is regarded as personal property, no matter in whom the legal title may be vested.

4. SAME—*remainder after debts are paid goes to heirs, subject to dower.* But what remains of such partnership real estate after debts are paid goes to the heirs in common or to devisees, subject to dower.

5. ADMINISTRATOR—*relation of, to his intestate's real property.* An administrator of a once surviving partner cannot purchase certificates of purchase of the firm lands sold at an inadequate price, on foreclosure, even though the partnership funds held by him were not enough to have redeemed all the lands, and, if he does so, he will hold the title as trustee for the widows and the heirs of the deceased partners.

6. TRUSTEE—*must not set his interest against his honesty.* A trustee is not permitted to place himself in a position where it will be difficult for him to be honest, and faithful to his trust.

7. EQUITY—*those who seek it must do it.* Those seeking, in equity, to divest others of legal title to land, may properly be required by the decree to repay advances for the purchase of the land, and for improvements put upon it.

APPEAL from the Circuit Court of Henderson county; the Hon. JOHN J. GLENN, Judge, presiding.

The original bill herein was ·filed by Paradine Galbraith, widow of Franklin Galbraith, deceased, and Marcellus Galbraith, Mary E. Sells, (*nee* Galbraith,) Thomas M. Galbraith, Edward M. Galbraith, James T. Galbraith, George F. Galbraith, Frederick Galbraith and Ralph

Galbraith, children and only heirs-at-law of said deceased. The bill was for the assignment of homestead and dower to the widow, and for the partition among the heirs of some twenty-seven different tracts of land that are not now in controversy, and also for the partition among said heirs of the five tracts of land hereinafter described. Silas Tracy and other tenants in possession of portions of the premises were made defendants, as were also the widow and heirs-at-law of Jesse Kemp, deceased, and the widow and heirs-at-law of John J. Kemp, deceased, the allegation in regard to such widows and heirs being, that they "claim to have some interest in some portion of said premises herein described, but your orators allege that whatever interest they, or either of them, may have had is now owned by your orators."

The two widows and the two sets of heirs answered the bill. Then two cross-bills were filed in the cause, one by Martha J. Kemp, the widow, and the heirs of John J. Kemp, deceased, and the other by Louisa F. Kemp, the widow, and the heirs of Jesse Kemp, deceased. Each of said cross-bills claimed that, by reason of the matters and things set forth in said cross-bills, respectively, Franklin Galbraith, at the time of his death, held the five tracts of land,—*i. e.*, 100 acres off of the east side of the south-east quarter of section 33, the east half of the north-east quarter of section 33, the north-west quarter of the north-east quarter of section 33, the east half of the south-west quarter of the north-east quarter of section 33, and the north-west quarter of section 34, all in township 10, north, range 5, west, in Henderson county, Illinois,—one undivided one-half in trust for the heirs-at-law of Jesse Kemp, deceased, and the other undivided one-half in trust for the heirs-at-law of John J. Kemp, deceased; that the heirs-at-law of Franklin Galbraith, deceased, hold said lands in like trust and for the same purposes and parties, and that Martha J. Kemp and Louisa F. Kemp were each entitled to dower in an undivided

one-half of the premises. Issues were formed upon the original bill and upon the cross-bills.

At the hearing, the findings and decree of the circuit court, so far as they affect the matters here in controversy, were, in substance, that Franklin Galbraith, in his lifetime and at his death, held, and the complainants in the original bill since his death hold, the five tracts of land above described, in trust for the benefit of the heirs-at-law of Jesse Kemp and John J. Kemp, the undivided one-half for each set of heirs ; and that the complainants in the original bill, heirs of Galbraith, are entitled to be reimbursed for all proper outlay, over and above rents, issues and profits, made by their father or by themselves on account of said lands. The widow and the heirs of Franklin Galbraith bring the case to this court by appeal and assign various errors, and the appellees assign cross-errors.

The facts of the case, in brief, are substantially as follows : For a number of years prior to March 13, 1881, Jesse Kemp and John J. Kemp, brothers, were partners in farming and stock raising and in dealing in stock. They do not seem to have had any fixed partnership name or designation. Most of the notes signed by them, so far as appears from the evidence, seem to have been signed with their individual names, thus : "Jesse Kemp, John J. Kemp." One is signed "J. & J. J. Kemp." An account against them was made out against "Jesse and J J.Kemp." The abstract of judgments shows six claims allowed "against the estate of John J and Jesse Kemp." They owned a large amount of personal property, and, in their joint names, the real estate above described.

John J. Kemp died March 13, 1881. Jesse Kemp, as the surviving partner, filed in the county court of Henderson county, on September 29, 1881, a partnership inventory, dated September 29, 1881, which inventory contains a description of the lands herein above described, and states the incumbrance on 240 acres of it to be a

mortgage of $3000 to I. J. Brook, and states that on the north-west quarter of section 34 there is a mortgage of $1000, and it inventories debts amounting to $2230. It also contains a long list of personal property. It purports to be "a true and correct inventory and exhibit of the real and personal estate belonging to the firm of Jesse and John J. Kemp at the time of the death of said John J. Kemp." It was subscribed and sworn to by said Jesse Kemp. The appraisement of the partnership personal property amounted to $3115.25. On October 18, 1881, Jesse Kemp filed in the county court a sale bill of personal property of "said firm of J. & J. J. Kemp," showing that he had sold personal property "of said firm" to the amount of $2029.40. It does not appear from the record evidence or other testimony what disposition was made by Jesse Kemp of the $2029.40 received by him from the sale of partnership personal property. The claims against the firm seem to have been allowed, after the death of Jesse Kemp, against his estate, "as surviving partner of the firm of Jesse and John J. Kemp."

Jesse Kemp died June 15, 1883, and on July 7, 1883, Franklin Galbraith was appointed administrator of his estate, and on July 9, 1883, Samuel Galbraith was appointed administrator of the estate of John J. Kemp.

At the June term, 1883, of the county court, Franklin Galbraith filed an appraisement bill of the estate of Jesse Kemp, which shows a widow's award set off to the widow of $1133, and property appraised at $1806.75. This appraisement bill was duly approved by the county court July 25, 1883. On October 27, 1883, he filed a sale bill in said estate, showing property sold to the value of $1341.12, which was duly approved by the court. On September 18, 1888, he filed a report as administrator of the estate of Jesse Kemp, from his appointment to October, 1886, showing that he received from all sources $1341.12, and that he had paid out $486.46. On November, 1890, he filed another report as such administrator, said report bearing

date August 3, 1889. It shows total received $1341.12, same as in his first report; shows the debts of Jesse Kemp, and of Jesse and John J. Kemp, partners, to be $3349.25, not including the claims of Peterson and of Moir, which it shows were paid by redemption of land. The claims of Peterson and of Moir, at time of redemption, amounted to $1434.41, making the total indebtedness of the estate of Jesse and of the firm, outside the mortgages, $4783.66. It seems impossible to determine just how much of this was partnership indebtedness. The report shows : school claims paid in full $334.70; fifth class claims, $160.21; costs and expenses, $298.78; balance to distribute on seventh class claims, $547.44. This report was duly approved by the county court, November 28, 1890.

On the 17th day of December, 1878, Jesse Kemp and wife and John J. Kemp and wife executed a mortgage to I. J. Brook to secure the sum of $3000, on 100 acres off the east side of the south-east quarter of section 33, the east half of the north-east quarter of section 33, the north-west quarter of the north-east quarter of section 33, and the east half of the south-west quarter of the north-east quarter of section 33, containing 240 acres. On January 21, 1884, a bill was filed by Robert Moir, owner of said mortgage, to foreclose the same. The widow, Martha J. Kemp, all the children, and Samuel Galbraith, administrator of said John J. Kemp, were parties defendant, and the widow and children of Jesse Kemp, and Franklin Galbraith, administrator of the estate of Jesse Kemp, were also made defendants in said bill. At the August term, 1884, a decree was entered in the cause, finding the allegations in the bill to be true, and ordering the lands sold to pay the amount due. The master in chancery sold the lands on November 8, 1884, to Robert Moir, for the total sum of $4114. On November 9, 1885, the several certificates of purchase were assigned to Franklin Galbraith, and on February 22, 1886, a deed was made to him for said lands by the master in chancery. At the August term,

1886, the sale and deed were approved by the court. Immediately after the deed was made to Galbraith he took possession of said land, and has been in possession of the same ever since.

On February 1, 1876, Jesse Kemp and wife and John J. Kemp and wife gave a mortgage on the north-west quarter of section 34, township 10, north, range 5, west, to secure $500, and on the same day gave a second mortgage on the same land to secure a like sum of $500. On May 9, 1882, both of these mortgages were assigned to Priscilla Trimmer. On July 10, 1884, Priscilla Trimmer filed a bill to foreclose both of said mortgages, in the Henderson county circuit court, against Samuel Galbraith, administrator of the estate of John J. Kemp, and Franklin Galbraith, administrator of the estate of Jesse Kemp, and the widows and children of both John J. and Jesse Kemp. At the August term, 1884, a decree was entered foreclosing said mortgages and ordering the land sold, and said land was sold under the decree on the 8th of November, 1884, to Priscilla Trimmer, for $1241. This land was redeemed by Robert Moir and James Peterson on three judgments they obtained in the county court of Henderson county: one in favor of James Peterson, against the estate of Jesse and John J. Kemp, for $262.66; one in favor of Robert Moir, for the sum of $847, against the estate of John J. and Jesse Kemp; and one in favor of said Moir, against the estate of Jesse Kemp, for $244. A deed was made to Moir and Peterson for the said land by the sheriff upon said redemption, and nine days thereafter Moir and Peterson made to Franklin Galbraith a deed for said land, he paying to Moir and Peterson the redemption money, $1340.28, and their judgments in full, $1434.41, making $2774.69.

On July 7, 1883, when Franklin Galbraith was appointed administrator of the estate of Jesse Kemp, the personal property said Jesse Kemp had left, both in his individual right and as the surviving partner of Jesse and

John J. Kemp, amounted, as shown by the appraisement bill filed July 25, 1883, to $1806.75. The sale bill, dated October 27, 1883, foots up $1341.12.

Mr. E. U. OVERMAN, and Messrs. SHARP & BERRY BROS., for the appellants.

Messrs. KIRKPATRICK & ALEXANDER, for the appellees.

Mr. JUSTICE BAKER delivered the opinion of the court :

For a number of years Jesse Kemp and John J. Kemp carried on the business of raising and dealing in live stock, in partnership. The stock, machinery, implements and other personal property employed in such business were partnership property. The 400 acres of land on which the business was conducted stood in their joint and joined names, and was presumably purchased for the purposes of the partnership business, and seems to have been used and regarded by them as partnership property. When John J. Kemp died, Jesse Kemp, the surviving partner, became a trustee in respect to the property and assets of the late partnership. In equity, a surviving partner is treated as a trustee, with the fiduciary relation of trustee and *cestuis que trust* existing between him and the representatives of the deceased partner. There is a conflict in the authorities upon this point, but in this State the law is as stated. *Nelson* v. *Hayner et al.* 66 Ill. 487; 17 Am. & Eng. Ency. of Law, pp. 1154, 1155, and cases cited in notes.

Jesse Kemp, the surviving partner, filed in the county court an inventory of the real and personal estate of the late partnership, under oath, and in it was a schedule of the lands here in question. Then Jesse Kemp died, and Franklin Galbraith became administrator of his estate, and assumed and undertook the administration of the trust in respect to the partnership property. Among other things he reported to the county court that there

was "property in his hands of the late firm of John J. & Jesse Kemp, of which partnership said Jesse Kemp was the survivor," and he applied for and obtained an order for the sale of all the personal property contained in the inventory and appraisement bill, stating it was the property "of said late firm," and he realized from the sale thus made, the sum of $1341.12.

In the event of the death of both the partners before the settlement of the partnership affairs, the administrator of the last survivor stands in the shoes of his intestate, and he is charged with the duty of completing the settlement, as a trustee, the relation between him and the legal representatives of the partner first deceased being that of trustee and *cestuis que trust*. (*Dayton* v. *Bartlett*, 38 Ohio St. 357; *Thompson* v. *Thompson*, 1 Bradf. 24; *Brooks* v. *Brooks*, 12 Heisk. 12; 17 Am. & Eng. Ency. of Law, 1158.) In equity the real estate of a partnership is regarded as, and stands on the same footing with, personal property, no matter in whom the legal title may be vested. (*Bopp* v. *Fox et al.* 63 Ill. 540; *Simpson* v. *Leech*, 86 id. 286; *Trowbridge* v. *Cross*, 117 id. 109; *Alkire et al.* v. *Kahle*, 123 id. 496.) But whatever remains of it after the partnership debts shall have been discharged is held in common by the heirs, subject to dower, or goes to the devisees. *Strong et al.* v. *Lord et al.* 107 Ill. 25.

It is urged that Franklin Galbraith, administrator of Jesse Kemp, took no interest in the lands,—only a power to sell them for the payment of debts,—and that therefore no duty devolved upon him to redeem the lands from the sales made by the master in chancery, and that after the expiration of the time allowed by law for the redemption of the lands to the widows and children of Jesse Kemp and John J. Kemp, if not before, he had the right to purchase the certificates of sale or buy the lands. This claim is inconsistent with the position he occupied as trustee in respect to the partnership property. Besides

this, it was expressly held in *McCreedy* v. *Mier et al.* 64 Ill. 495, that an administrator is not a stranger, in all respects, to the real estate of his intestate; that it is, under some circumstances, his duty to redeem from a sheriff's sale, and that under the facts of that case he became trustee for the heirs. The case was quite like the case at bar. The administrator procured an assignment of the certificate of purchase to be made to his brother. This court said: "It is plain that the same principle which forbids him to become a purchaser at a sale under order of court, must forbid him to buy, on his own account, a certificate of purchase given by the sheriff or master on a sale made in the lifetime of the deceased."

It is urged that only $1341.12 came to the hands of Franklin Galbraith, the administrator, in money, and that such sum was wholly insufficient to redeem from the $3000 mortgage, the two $500 mortgages, and pay the claims against the estate, and costs and expenses of administration. The 160 acres in section 34 sold for $1241. The other four tracts were sold separately, one for $1780, one for $324, one for $670, and one for $1340, and in order to redeem one tract it was not necessary to redeem all. The total sum called for by the five certificates of purchase was $4907.69. Deducting therefrom the $1341.12 in money would leave only $3566.57, plus interest to time of redemption, to be arranged for in order to redeem all the land from the mortgage sales. The lands were worth from $12,000 to $14,000,—a value more than three times, and almost four times, the amount of the required sum. It is almost certain that Galbraith, with the business and financial ability that this record indicates that he possessed, could readily have arranged, through the unsecured creditors or otherwise, to save the whole or some portion of the 400 acres of land to the two widows and their children, if he had felt so inclined. As for the widows and children, they had no money or means or business capacity.

Even if it should be said that the record does not jus-
tify these surmises and conclusions, yet that would make
no difference in the decision of this case. A trustee is not
allowed to put himself in a position in which to be honest
must be a strain on him. (*Staats* v. *Bergen*, 2 C. E. Green,
554; *Tyler* v. *Sanborn*, 128 Ill. 136.) The very next day
after the right of the widows and heirs to redeem from the
sales under the $3000 mortgage had expired, the trustee
purchased the four certificates of purchase from Moir, and
immediately upon the expiration of the statutory fifteen
months he received a deed from the master in chancery,
and at once took possession of the 240 acres of land. In
the county court he waived process and entered his ap-
pearance, and raised no objections, and allowed judg-
ments to be entered on the Moir and Peterson claims.
Then Moir and Peterson redeemed the 160 acres in sec-
tion 34 from Priscilla Trimmer, and, there being no bid
over and above the redemption money, they forthwith
received a deed from the sheriff. That deed bears date
December 5, 1885, and nine days thereafter, on December
14, 1885, they conveyed to Galbraith, the trustee, he pay-
ing them the amount of the redemption money and the
amounts of their respective claims against the Kemps.
As matter of course, this whole thing was pre-arranged.
It cannot, in reason, be deemed otherwise.

We forbear to enter into any discussion of the evidence
tending to prove that Galbraith and others took steps to
prevent any competition at the sale made by the sheriff,
and other like matters. Thus Galbraith, the trustee, got
the whole of the lands at just half of their then actual
value. It is unnecessary to consider much, if any, of the
oral testimony that was taken at the hearing, other than
that in regard to values. The quiet records of the county
and circuit courts, and those that rest in the recorder's
office, though they are dumb yet they speak, and they
establish the cases of the complainants in the two cross-
bills.

It is urged in behalf of the cross-errors assigned, that there is no evidence in the record upon which the heirs of John J. Kemp can be bound, showing a partnership interest in the lands; that Galbraith, at least so far as relates to the 160 acres in section 34, "was in no way connected with the widow and heirs of John J. Kemp, or with his estate," and that therefore the circuit court erred in directing an account to be taken of any sum or sums of money that Galbraith may properly have laid out or expended for or on account of the respective undivided halves of said lands. We think that the evidence sufficiently establishes that the 400 acres of land were partnership lands, and we do not see upon what theory the equities of the widow and children of John J. Kemp can be worked out, in respect to the whole of the 400 acres, as against the title of appellants, other than on the theory that Franklin Galbraith, as administrator of Jesse Kemp, the surviving partner of John J. Kemp, stood in a fiduciary relationship to the widow and heirs of said John J. Kemp in respect to such land. How, otherwise, can they have any relief whatever in respect to the 240 acres? Counsel, in their brief, say: "So far, then, as any partnership property or liabilities were concerned, Galbraith represented the interests of both partners, hence occupied the same relative position to the one set of heirs as he did to the other. By his obligation as administrator of the estate of the survivor he was bound to care for the interests of all." And they make use of numerous other like arguments and expressions. It is not admissible that one should blow both hot and cold with reference to the same transactions. *Allegans contraria non est audiendus.*

Where parties seek, in a court of equity, to divest others of a legal title to land, the court may impose equitable terms on which relief will be granted, and if it appears that the parties divested have advanced money for the purchase and improvement of the property, the court, in its decree finding it to belong to the parties making

claim to the land, may properly require the money so advanced to be refunded, with legal interest. (*St. Patrick's Catholic Church* v. *Daly*, 116 Ill. 76.) The decree of the circuit court in that behalf, and in regard to all other matters, does justice and equity between the parties.

The decree is in all things affirmed.

*Decree affirmed.*