The Chicago and Calumet Rolling Mill Company

*v.*

Daniel B. Scully.

*Filed at Ottawa May 12, 1892.*

1. Conveyance— *as security—when set aside.* A deed made by a corporation to its president to secure him in a sum of money advanced and a further advance to be made, and to secure a conveyance of a tract of land to the company, if the execution of the deed so made by the corporation was not procured by fraud, it will be binding on the corporation, and will not be set aside for a want of consideration until the moneys so advanced are repaid, with interest.

2. Redemption— *land conveyed as security—terms of redemption.* On a bill to redeem from a mortgage, as a general rule, the court should

decree that complainant be allowed to redeem upon payment of the sum found due, within a reasonable time to be fixed, together with the costs, and that in default of such payment the bill be dismissed.

3. But on bill to set aside a deed on the ground that it was obtained by fraud and without consideration, the complainant will not be entitled to a decree allowing redemption. In such case, a decree finding that the deed was given to secure the payment of money, and the amount due, and requiring the payment thereof within a time fixed, and on default of payment decreeing that such deed shall become absolute, is more favorable to the complainant than he is entitled to under such a bill.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. KIRK HAWES, Judge, presiding.

This was a bill brought by the Chicago and Calumet Rolling Mill Company, against Daniel B. Scully, for the purpose of setting aside a deed executed by the company on the 17th day of March, 1890, in which it conveyed to Scully the east half of section 10, township 38 north, range 12, east, in Cook county. The ground relied upon in the bill to impeach the deed is, that it was obtained by fraud, and without consideration.

It appears from the bill that the land was purchased by the complainant, by contract for a deed, on the 5th day of March, 1890; that $5000 was then paid on the contract, and $15,000 more was agreed to be paid in twelve days thereafter, when a deed was to be made and notes and mortgage given to secure the balance of the purchase money. It also appears from the bill that the $15,000 was paid on the 17th day of March, 1890, and a deed made to complainant, and notes and mortgage given to secure the balance of the purchase money. The bill then alleges, "that subsequent to complainant's said purchase, and on the 17th day of March, 1890, said defendant, Scully, fraudulently designing and intending to cheat and defraud complainant by unlawfully obtaining the possession, control and title to the said property in his

own name, did induce one J. Louis Pfau, Jr., then vice-president of the complainant, and one George Campbell, assistant secretary of said complainant, to execute and deliver to°him a quitclaim deed to said real estate, dated the 17th of March, 1890, which deed was made in fraud of the rights of complainant, and without consideration; that said Scully fraudulently and falsely represented to said Pfau and Campbell, in order to obtain his pretended title to said property, that he would pay the balance due from him to complainant on account of his subscription to the capital stock of said corporation, and that he would hold said real estate in trust for complainant, and for complainant's use and benefit, and that he would reconvey the same to complainant on demand; that said Pfau and Campbell, as said officers of complainant, relying upon the good faith of said representations by Scully, and considering them of sufficient inducement to intrust said Scully, as president of said Chicago and Calumet Rolling Mill Company, with the title to complainant's said lands, did, without authority from complainant, and contrary to the by-laws of complainant, and in violation of law, and without proper and legal notice to the stockholders of said corporation, and without consideration, execute and deliver said pretended conveyance of said property to said defendant, Scully."

The bill contains various other allegations, but it will not be necessary to set them out, as the foregoing allegation shows the true theory of the bill. The bill prays that Scully be declared trustee for complainant of said real estate, that he be required to reconvey the same to complainant, and that payments made by him be declared to be made for the use and benefit of complainant, complainant offering to pay said Scully whatever sum or sums of money, if any, he may have advanced for complainant, or which he may have paid to the credit of complainant, on its secured notes or otherwise, and general prayer for relief.

The defendant, Daniel B. Scully, put in an answer to the bill, in which he denied all the material allegations of the bill; denied that complainant paid $20,000 purchase money on the premises, but set up that all the money paid on the purchase of the land was paid by the defendant. The defendant, further answering, said: "It is false that defendant, fraudulently designing and intending to defraud and cheat complainant, unlawfully obtained possession and control of said property and converted the same into his own use, and false that he induced J. Louis Pfau, as vice-president, and George Campbell, as assistant secretary, to execute the quit-claim deed described in the bill; denies that said deed was fraudulent or in fraud of the rights of complainant, and without consideration; that it is untrue that defendant fraudulently and falsely represented to said Pfau and Campbell, in order to obtain title to said property, that he would pay the balance due from him to complainant on account of said subscription to the capital stock, or that he would hold said real estate in trust for complainant, or that he would reconvey the same to complainant; that it is false that said Pfau and Campbell, as officers of said company, relied upon any such representations." It is also set up in the answer, that when it became apparent that complainant had no money to complete the purchase of the land, and that the only money that went towards the payment belonged to the defendant, there was a meeting called of the officers of said corporation, who were, together, the stockholders thereof; that it was evident at said meeting of the stockholders, which was attended by Pfau and said pretended secretary, George Campbell, that said corporation could not purchase said property, and in order to save said property, if possible, it was agreed that said Scully should make the payments necessary to preserve said property, and give said company an opportunity to again acquire the same within thirty days from the date of the passage of the resolution hereinafter referred to; that said defendant

did make said purchase, and with the consent of the officers. of said corporation and the stockholders, to give said corporation the opportunity of again acquiring said premises within. thirty days from the 17th day of March, 1890; that said Pfau and the other officers represented to defendant that they would endeavor in the meantime to dispose of the stock of said corporation, and with the proceeds pay said Scully the sum he had advanced towards the purchase thereof; that on March 17, 1890, at a full meeting of said board a resolution for the conveyance of said property was considered and passed, in pursuance of which said deed was made, since which time defendant has, in all, paid towards the purchase of said premises, $36,000—all his own money. Defendant denies that he is a trustee for said corporation and holds the title as such; denies that complainant has any right thereto, but says that defendant is the absolute and sole owner of said property, free and clear of all claims of complainant; denies all combination and confederacy, and prays to be dismissed, etc.

A replication was filed to the answer, and the court proceeded to a hearing on the pleadings and evidence, and the court found, in its decree, that at the time the premises were purchased, the defendant advanced to the complainant the sum of $5000, which was used by the complainant towards the payment of the purchase price for said premises, and the complainant did obligate itself to pay, on or before twelve o'clock of the 17th day of March, 1890, the further sum of $14,280; that all the money paid on account of the purchase of said premises was the money of the defendant, Daniel B. Scully, and no part thereof was the money of complainant; that on said 17th day of March it became apparent that complainant was unable to carry out the provisions and conditions of said contract and to pay said sum of $14,280, as required in said contract, and that it was then and there agreed between the complainant and the defendant that the defendant should advance the $14,280 necessary to comply with the terms of

said contract of purchase, and that the complainant should deed the land to the defendant, who was to hold the same until such time as the complainant would repay to the defendant said sums of $5000 and $14,280, and that thereupon the defendant should reconvey said premises to the complainant; that in pursuance to said agreement the defendant did pay the sum of $14,280, besides the $5000 already paid on account thereof, and the complainant did, on the 17th day of March, 1890, convey to the defendant the premises; and the court further found that defendant has paid, in addition to said sum, $32,873.60 to release the premises of incumbrances which had been assessed as part of the purchase money; that all the money paid by the defendant, with interest, amounts to the sum of $54,215.57.  The court therefore decreed that complainant pay said sum on or before March 2, 1891, and upon such payment being made, that defendant convey the premises to complainant; that in default of such payment the deed conveying the premises, by the complainant to the defendant, shall become an absolute conveyance.

Messrs. KNIGHT & BROWN, for the appellant:

The two sums of money paid by appellee on account of the purchase of the land did not constitute a loan to the appellant, but were payments on capital stock subscribed, and hence the $19,280 should not have been included in the amount decreed to be paid by appellant to appellee.

Under the facts found in the decree, the quitclaim deeds to appellee were a mortgage, and appellant is entitled to its statutory right to redeem.  Rev. Stat. chap. 95, sec. 12.

If it shall appear that the conveyance, regardless of its form, is in fact but a security, it will be held a mortgage.  *Workman* v. *Greening*, 115 Ill. 477; *Miller* v. *Thomas*, 14 id. 428; *Tillson* v. *Moulton*, 23 id. 648; *Shaver* v. *Woodward*, 28 id. 277; *Smith* v. *Cremer*, 71 id. 185; *Life Ins. Co.* v. *White*, 106 id. 67; *Bearss* v. *Ford*, 108 id. 16.

414 CHICAGO AND CAL. ROLLING MILL CO. *v.* SCULLY.

Brief for the Appellee. Opinion of the Court.

The fact then being established that the transaction was a mortgage, the mortgagor can not be deprived of his equity of redemption by any form of contract. *Jackson* v. *Lynch*, 129 Ill. 72.

Mr. ARNOLD TRIPP, for the appellee:

As to when a straight deed is a mortgage, see *Pitts* v. *Cable*, 44 Ill. 103; *Shays* v. *Norton*, 48 id. 101; *Magnusson* v. *Johnson*, 73 id. 158; *Sharp* v. *Smitherman*, 85 id. 154; *Bentley* v. *O'Bryan*, 111 id. 60; *Caprez* v. *Trover*, 96 id. 456; *Rue* v. *Dole*, 107 id. 275.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

Two alleged errors are relied upon to reverse the judgment of the Appellate Court: First, it is claimed that the decree is erroneous in requiring complainant to repay the $19,280 which the court found the defendant had advanced on the purchase of the premises; and second, it is insisted that the court erred in decreeing that in case default should be made in the payment of the money advanced by defendant, on or before March 2, 1891, then the conveyance executed by the complainant to the defendant should become absolute.

The complainant, as appears from the evidence, was a corporation, with an apparent capital of $100,000. J. Louis Pfau, Jr., owned stock amounting to $999,800, Jean L. Pfau owned $100 in stock, and George Campbell owned a like amount. No money, however, had been paid into the company on account of stock, and the corporation, therefore, was one without means. Pfau, who owned the most of the stock, in the month of February, 1890, met the defendant, Scully, and undertoook to induce him to invest in the stock of the company. Various representations were made as to patents, real estate and plants owned by the company, after which the following proposition was made:

"*Daniel B. Scully, Esq., City:*    "CHICAGO, *March 1, 1890.*

"DEAR SIR—I hereby make you the following proposal: If you will invest $25,000 as a stockholder in the Chicago and Calumet Rolling Mill Company, on the plans outlined in our prospectus, I agree, as a holder of a controlling interest, to vote my stock in your favor as president of the company, the salary being $5000 per year, and will further contract not to sell or dispose of my controlling interest, and to vote same with you in all matters of control, or of any policy favorable to the stockholders and to the company.    I will also deposit $12,500 of my present preferred stock in your hands as security that you shall receive, in dividends on your investment, at least ten per cent per annum for five years, or fifty per cent; when you have received fifty per cent, my stock to be returned to me.    All of which is most respectfully submitted.

J. LOUIS PFAU, Jr."

Upon the representations and promises made, it seems, from the evidence, that Scully did become interested in the company, but how far or to what extent it is not necessary to a decision of the case to inquire, as the question presented on this branch of the case is, whether the $19,280 advanced by Scully was paid on account of stock subscription or on account of the purchase of the premises, the complainant insisting that the money was paid on account of stock subscriptions, and was not to be repaid, while on the other hand the defendant claims he merely advanced the money as purchase money for the premises, which the complainant agreed to repay within a certain specified date, and upon default of payment he was to hold, absolutely, the premises.

After Scully had received the proposition of March 1, and before he had determined what he would do, it became necessary to pay $5000 to secure the contract for the purchase of the premises.    Scully, on March 5, 1890, advanced the $5000, and it was paid on the purchase of the premises.    At the time

this money was advanced it does not appear in what manner or by whom he was to be repaid, but on the 17th of March it became necessary to pay $14,280 more, to complete the first payment on the property, and before that time arrived Scully became satisfied that the representations made to him in regard to the company were not true, and that the company was worthless. He therefore notified Pfau that he would not pay any more money into the "concern" unless he received a deed of the premises. Pfau saw at once that the company would lose the property unless some arrangement was made to raise the amount required to make the first payment. He therefore agreed with Scully, that if he would pay the balance due on that day, and give the company thirty days to sell stock and repay the amount, the company would give him a deed. A meeting of the directors and stockholders of the company was called, and Pfau prepared a letter to be addressed to the company, which Scully signed. The directors met, and adopted a resolution authorizing the vice-president to execute a deed to Scully. The letter and resolution of the board are as follows:

"Chicago, *March 17, 1890.*

"*To the Chicago and Calumet Rolling Mill Co.:*

"Gentlemen—I have subscribed for $25,000 worth of the capital stock of this company, upon which I have paid $5000, and have agreed to pay the balance as soon as needed by the company. The $5000 paid in by me has been used as a payment on the east half of section 10, Lyons, and another payment of nearly $15,000 must be made to-day. As this company has been disappointed in placing other stock up till the present time, and as my money alone is being used for the first payment on the 320 acres of land, I hereby request that in consideration of my making this payment to-day, this company execute to me a quitclaim deed to said 320 acres of land about to be conveyed to it, the same to be held by me in case no other stock is sold. As soon as the company shall

acquire title to the west half of said section 10, and receive other cash subscriptions, I stand ready to transfer said property back to your company.

"Yours, truly,                    D. B. SCULLY."

"*Resolved,* That the proposition contained in this letter be accepted by the company, and that the vice-president of the company be and he is hereby authorized to execute such deeds as may be necessary to convey the interest of said company in said real estate to said D. B. Scully, and in case said company's stock shall not be taken and paid for within thirty days from this date, then said conveyance shall be an absolute conveyance, and said company shall have no further interest in said land, or any part thereof."

After the resolution was adopted, Scully advanced the remaining $14,280, which completed the first payment for the premises, and the premises were conveyed to him, as contemplated in the resolution.

From the resolution of the board of the company, and from other evidence in the record, it is apparent that Scully received a conveyance of the property as security for the payment of the $19,280 which he had advanced on the purchase price of the land. The finding of the court that the $19,280 was advanced by Scully on the agreement that it was to be repaid to him, and that he received a deed of the premises, to be held until such time as complainant would repay the money advanced, is fully sustained by the evidence. We find no satisfactory evidence in the record that Scully paid this money for stock in the company, as is claimed by the complainant. Indeed, it is plain, from the evidence, that Scully informed the company, before the arrangement under which the deed was made, that he would rather lose the $5000 which he had advanced than put any more money in the company, unless he received a deed of the property.

We now come to the second question. It will be remembered that the court found that the defendant had advanced

27—141 ILL.

on the premises $54,215.57, and the decree required complainant to pay that sum to defendant on or before March 2, 1891. The decree also provided, upon such payment being made, defendant convey the premises to complainant, but in default of payment the deed conveying the premises to the defendant should become an absolute conveyance. It is insisted, in the argument, that this part of the decree is erroneous, because it deprives the complainant of the right of redemption provided by the statute,—in other words, that it was the duty of the court to order the premises sold for the amount found due, with the right of redemption provided by statute.

On a bill to redeem from a mortgage, as a general rule, the court should decree that complainant be allowed to redeem upon payment of the sum found to be due within a reasonable time to be fixed, together with costs, and in default of such payment the bill be dismissed. (*Decker* v. *Patton,* 120 Ill. 464; *Bremer* v. *Dock Co.* 127 id. 464.) But whether that rule should apply to this case or not, it will not be necessary to determine, as this was not a bill to redeem. The sole purpose of the bill in this case was to set aside the deed made by the complainant to the defendant, on the ground of fraud. There was no allegation that the deed was a mortgage, nor did the bill pray for leave to redeem. If, therefore, the complainant, under a proper bill, might be entitled to have the premises sold for the amount found due, with the right of redemption provided by statute, he had no such right here, as no such case was made by the bill. The decree rendered by the court allowing complainant the right to redeem upon payment within a specified period was far more favorable to complainant than it was entitled to ask under the allegations of its bill, and it has no just ground for complaint.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*