DENNIS O'CONNELL

v.

MARTIN A. O'CONOR.

*Opinion filed June 19, 1901.*

1. EQUITY—*ground of jurisdiction of chancery to decree cancellation of deed.* The jurisdiction of chancery to decree the cancellation of a deed rests upon the ground that it is against conscience for the party holding the deed to retain it or attempt to enforce it against the complainant, and hence applications to cancel deeds are subject to the maxim "he who seeks equity must do equity."

2. SAME—*when deed should not be canceled without requiring complainant to refund consideration.* Where the deed sought to be canceled is the outgrowth of a mortgage which complainant, by his representations, procured to be accepted as constituting a valid lien upon the true title to the property, thereby inducing the mortgagee to accept the mortgagor's note and surrender up a valid obligation of the complainant for part of the amount, relief should not be granted at the instance of complainant except upon condition that he pay the defendant the sum of money intended to be secured by the mortgage, with interest from the date thereof.

APPEAL from the Circuit Court of LaSalle county; the Hon. CHARLES BLANCHARD, Judge, presiding.

JAMES J. CONWAY, and BREWER & STRAWN, for appellant.

DUNCAN & DOYLE, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This was a bill in chancery exhibited in the circuit court of LaSalle county by the appellee, Martin O'Conor, against the appellant and against other persons who are not parties to this appeal. The bill alleged that the complainant, Martin A. O'Conor, (appellee here,) stood seized of the title in fee to lot No. 6, block 116, in the city of LaSalle; that the appellant had caused to be recorded a deed from the master in chancery of said LaSalle county, purporting to convey to him (the appellant) the said lot in pursuance of a sale made under a decree of foreclosure

entered in the LaSalle circuit court, but that said master's deed conveyed no title whatever and was a cloud on appellee's title. The bill prayed for a decree canceling said master's deed as a cloud on the title of the appellee. The parties to the bill other than the appellant were defaulted. He filed an answer, and on a hearing a decree was entered in accordance with the prayer of the bill, and appellant has perfected this appeal to bring the decree in review in this court.

The decree appealed from recites as the finding of fact relative to the title of the appellee, (complainant below,) that one Ellen O'Conor (mother of appellee) entered into actual possession of the lot in question in July, 1874, under the claim that she was the owner thereof, and continued in the open, adverse, notorious, exclusive and continuous possession thereof for a period of more than twenty years, and thereby became the owner of the title to the lot in fee simple, and after the expiration of said period conveyed the lot to the appellee and delivered to him the possession thereof.

Ellen O'Conor, whose possession of the said lot is relied on to establish the title of appellee thereto, was the wife of Michael O'Conor, now deceased. In 1874 (the date of the beginning of the alleged period of twenty years' possession aforesaid) the family consisted of the husband, Michael O'Conor, the wife, said Ellen O'Conor, and three sons and a daughter, namely, Martin, (the appellee,) Thomas, Patrick J. and Mary Ann (now Keegan). The family had previously lived on a farm near LaSalle, and in 1874 a house was built on the lot, which was occupied by the family as a residence. Michael O'Conor lived there with his wife and their children, including the appellee, until his death, which occurred in 1885. The position of the appellee is, the lot was vacant and unoccupied in 1874, and that the wife then took possession of it, had the dwelling house built upon it out of her own means, and that though the husband, wife and their sons and

daughter resided in the property, the possession and control of the property were exclusively in the wife and that she claimed to be the owner thereof.

In 1868, some six years prior to the construction of the house on the lot, one Appleton R. Hillyer obtained a tax deed for the lot. Whether he had other claim of title does not appear. In 1880 Hillyer conveyed such title or interest as he had to Mary A. O'Conor, (now Keegan,) a daughter of said Ellen O'Conor, and who then resided with said Michael and Ellen, her father and mother, in the family home on the lot. Mary A. held the title so acquired until 1882, when she conveyed it to Patrick J. O'Conor, her brother, an unmarried man of mature years, who also resided in the home with his father, Michael, and his mother, said Ellen, and his brothers, the appellee and said Thomas. In May, 1884, Patrick J. mortgaged the lot to one John O'Connell, Sr., father of the appellant, to secure a note in the sum of $250, and in October, 1884, Patrick J., who still resided in the same house with his father and mother and the appellee, on said lot, executed a deed to said Ellen O'Conor, his mother, purporting to convey the title to her. This deed contained a condition hereinafter set forth. The mortgage to said John O'Connell, Sr., father of appellant, and the deed to said Ellen O'Conor, were duly recorded in order as they bore date, respectively. A decree of foreclosure, to which said Patrick J. and said Ellen O'Conor were parties, was entered on this mortgage in the circuit court of LaSalle county, and the appellant, Dennis O'Connell, purchased the lot at the sale made by the master in chancery in pursuance of the decree, and in default of redemption received a deed for the lot from the master. The decree in the case at bar now brought under consideration by this appeal orders this master's deed be canceled of record and that it be for naught esteemed.

When the mortgage was executed by Patrick J. O'Conor to John O'Connell, Sr., now deceased, the only paper

title to the lot, so far as this record discloses, was in Patrick J.   He lived in the house on the lot, a member of a family composed of his father, his mother, (the said Ellen O'Conor,) his.brother Martin, (the appellee,) and Thomas, another brother,—the sister, Mary A., having intermarried with one John C. Keegan and removed to the home of her husband.  Thomas O'Conor was involved in trouble of a criminal character, the exact nature whereof is not clearly made known.   He had been confined in jail under the charge against him, had recovered his liberty, but feared further prosecution under an indictment against him, and it was necessary to secure money to assist him.   Dennis O'Connell, the appellant, and John O'Connell, sons of John O'Connell, Sr., testified that said Thomas O'Conor and the appellee, Martin A. O'Conor, came to the home of John O'Connell, Sr., their father, to induce said John O'Connell, Sr., to loan $200, to be used in the defense of the criminal charge against Thomas; that said John O'Connell, Sr., then held a note for $50 signed by the appellee, Martin A., and his brother Thomas; that John O'Connell, Sr., said to Martin A., the appellee, and to Thomas O'Conor, that he would loan the money they sought to get, ($200,) provided security, by way of a mortgage on the property here in question, was given to secure the re-payment of the money and also to secure the payment of the $50 note which John O'Connell, Sr., then held against said appellee, Martin A. O'Conor, and his brother Thomas; that appellee, Martin, and said Thomas, expressed themselves as satisfied with this arrangement, and that Thomas, in the presence of the appellee, Martin, said his brother Patrick J. owned the house and lot and would sign the note and mortgage,—that Patrick's title was good, etc.; that Martin, the appellee, agreed that the $50 note, on which he was one of the payees, should be also secured by the mortgage, and also said that his brother Patrick J. was "the right owner of the lot;" that afterwards, in pursu-

ance of the understanding arrived at by and between the appellee, his brother Thomas and said John O'Connell, Sr., said Patrick J. executed a note for $250 and a mortgage on the premises here involved to secure it, and delivered the same to said John O'Connell, Sr., who surrendered the note of $50, on which the appellee was one of the payees, and paid said Patrick J. $200 in money.

The appellee admitted, when testifying as a witness, that he knew of the execution of the mortgage by Patrick at the time of the transaction. When asked if he did not go to John O'Connell, Sr., and assist in arranging for the loan of the money for which the mortgage was in part given, he would only reply that he could not remember, and he made the same reply when asked if he had not signed the $50 note to John O'Connell, Sr. He admitted he heard his brother Patrick tell John O'Connell, Sr., that the title to the lot would be in him (Patrick) when his mother (Ellen O'Conor) died. In reply to another interrogatory appellee admitted that he saw said John O'Connell, Sr., as he was going to Peru, where the mortgage was afterward executed by Patrick, and told him that Patrick would own the lot when his mother, Ellen, died, but appellee added, "I made use of that expression, but I did not bind myself in any way about the matter." When asked if the note for $50 before mentioned was not included in the mortgage, his reply was that he did not know as to that. Aside from the testimony given by the appellee, that of the appellant and his brother John was all the evidence relating to matter of the representations of the appellee to said John O'Connell, Sr., with reference to the title of Patrick to the lot.

In October, 1884, (after the execution of the mortgage to said John O'Connell, Sr., in May of the same year,) said Patrick J. O'Conor executed a deed conveying said lot to said Ellen, his mother. Both grantor and grantee then still resided in the same dwelling on the lot, and were members of the same family. The deed contained

the following statement: "The consideration of this deed is, that Ellen O'Conor, to whom this property is now deeded, is the mother of Patrick O'Conor, bachelor. To his mother, Ellen O'Conor, he deeds the above described property during her life, to revert to him at her death, a homestead for Mrs. Ellen O'Conor being the consideration." This deed was filed for record April 18, 1885.

At the June term, 1886, of the circuit court of LaSalle county, a decree was entered foreclosing the mortgage given by said Patrick J. O'Conor to said John O'Connell, Sr. The defendants to the proceeding were Patrick J. and his mother, Ellen. Both were personally served with process, and Ellen, the mother, filed an answer. The following extracts from the decree show the portions thereof material for the purposes of this investigation: "And the court further finds from said bill, and from the answer of Ellen O'Conor thereto, and from oral evidence, etc., that the allegations contained in said bill against said defendant, Patrick J. O'Conor, are true as therein stated, and as against the said defendant, Patrick J. O'Conor, the equities of this cause are with the complainant, and that there is now due the complainant, for principal and interest upon said note, the sum of $292.61 from said Patrick J. O'Conor; that to secure the sum of $250 due said complainant, on May 1, 1884, Patrick J. O'Conor executed his certain promissory note for that amount, payable in one year, at eight per cent interest, and to secure the payment of said note said Patrick J. O'Conor conveyed by deed of mortgage to said complainant whatever interest he possessed in lot 6, in block 116, LaSalle; that afterwards Patrick J. O'Conor conveyed said premises by quit-claim deed to Ellen O'Conor, and that whatever interest said Ellen O'Conor has received by virtue of said deed is subject to the rights of complainant under and by virtue of said mortgage. The court further finds that Ellen O'Conor, defendant, is entitled to a homestead interest in said premises. The court further finds

that said Ellen O'Conor took possession of said lot 6 as one of the heirs-at-law of Martin O'Conor, deceased, in the year 1874, and made all the improvements with her own money that were ever made on said premises, and that she has been continually in possession of the same until the present time, and occupied as her only homestead since she took possession as aforesaid. The court therefore orders, adjudges and decrees that said defendant, Patrick J. O'Conor, pay to the complainant within thirty days the sum of $292.61, with interest and costs of suit, and in default thereof the master in chancery of this court shall sell said interest in said lot 6, block 116, belonging to said Patrick J. O'Conor at the time of the execution of said mortgage, as well as whatever interest the said defendant, Ellen O'Conor, may have acquired in or to said premises by, through or under Patrick J. O'Conor since the execution of said mortgage to said complainant. Said sale of said lot shall be made subject to the right of homestead interest therein in favor of said defendant, Ellen O'Conor, and subject also to whatever interest, if any, said Ellen O'Conor has in said premises as one of the heirs of Martin O'Conor, deceased."

The appellant, Dennis O'Connell, as before said, purchased at the sale made by the master under this decree, and no redemption having been made, obtained a master's deed, being the deed ordered to be canceled by the decree in the case at bar.

Ellen O'Conor was a proper party defendant to this foreclosure proceeding. She held a deed from Patrick J. for the premises, and claimed other rights and interests in the premises not connected with the title acquired from Patrick. Such title or interest as she acquired through the conveyance from Patrick was subordinate to the lien of the mortgage, and this the court had full power to adjudicate in the foreclosure proceeding and declare in the decree. The court, however, found that said Ellen had some claim to or interest in the lot which was adverse

to the title to which the lien of the mortgage attached, and assumed to declare, though in an indefinite and unintelligible manner, the extent and character of such adverse claim or interest. But such interest, claim or title as said Ellen had or claimed to have otherwise than through her grantor, Patrick, so far as it was adverse to the title of the mortgagor, said Patrick, was not a proper subject for consideration or adjudication in a proceeding in equity to foreclose the mortgage. *Gage* v. *Perry*, 93 Ill. 176; *Bozarth* v. *Landers*, 113 id. 181.

The foreclosure decree assumes to declare the title and interest of Ellen O'Conor as follows: that which she had as the grantee of Patrick J.; that which she was entitled to as a homestead interest, and such right as she had obtained by taking possession of the lot in 1874 as one of the heirs of Martin O'Conor, deceased, (not the appellee, but his uncle, who died in 1868,) and holding such possession continuously therefrom, and that she had an equity by reason of having made such improvements as had been made on the lot. In the order of sale, while the direction is to sell "said interest in said lot 6, block 116, belonging to said Patrick J. O'Conor at the time of the execution of said mortgage, as well as whatever interest the said defendant, Ellen O'Conor, may have acquired in or to said premises by, through or under Patrick J. O'Conor since the execution of said mortgage to said complainant," still the further declaration of the order is, that "said sale of said lot shall be made subject to the right of homestead interest therein in favor of said defendant, Ellen O'Conor, and subject also to whatever interest, if any, said Ellen O'Conor has in said property as one of the heirs of Martin O'Conor, deceased." Appellee now denies that said Ellen O'Conor had or ever claimed any interest in the lot as one of the heirs of his said uncle, Martin O'Conor, deceased, or that she ever took possession in virtue of a claim based on such heirship.

The husband of said Ellen O'Conor died in 1885, prior to the rendition of the decree, but the appellee denies that the "homestead interest" mentioned in the decree means the homestead interest which she, as the widow of her deceased husband, had capacity to succeed to under the statute. He denies that the homestead interest specified in the decree is the interest of that nature which the provisions of the deed from Patrick J. to said Ellen declare was the consideration for and purpose to be attained by that conveyance. Her possession mentioned in the decree had not ripened into title or claim of any kind when the decree was rendered. Appellee's insistence is that this decree has no other effect than to invest the purchaser under it with such title as Patrick J. had.

The only paper title held by Patrick J. was the deed from his sister, Mary Ann. Mary Ann had no other paper title than the deed from Hillyer. Hillyer had a tax title for the lot,—whether other paper title or not does not appear. The appellant, as the purchaser at the mortgage sale, (even under appellee's view,) obtained by his deed made in pursuance of that sale such title as Hillyer had. It does not appear from this record that any one possessed a title to the lot by a chain of title from the general government, or by adverse possession or any character of prescription at the date of the execution of the mortgage by said Patrick J. O'Conor or at the time of the rendition of the decree. Conceding, however, that the proof heard in the cause justified the conclusion that said Ellen O'Conor has held open, continuous, adverse possession of the lot for the period of twenty years, (including the period before and that subsequent to the rendition of the foreclosure decree,) and conceding, then, that the master's deed to appellant should be considered as passing only such title as Patrick J. O'Conor had when he executed the mortgage, what should be declared, from an equitable standpoint, to be the extent of that title,

as between the appellee and appellant, under the proof in this cause?

We think it was established by the proofs that the appellee and his brother Thomas, acting in concert, by direct representations and by their acts and conduct declared to John O'Connell, Sr., that the paramount legal title to the lot was in said Patrick J. O'Conor when the mortgage to O'Connell was executed, and that said John O'Connell, Sr., was induced to accept said Patrick J. as being possessed of the true and paramount title to the lot by such representations and acts of the appellee and his brother Thomas, and that such representations were made and course of conduct pursued with the intent to induce said John O'Connell, Sr., to part with his money on the faith that a mortgage executed by Patrick J. would create a lien on the true title to the lot to secure the re-payment of the mortgage debt, and that said John O'Connell, Sr., was thereby induced to surrender an obligation which he held against the appellee for the payment by appellee of the sum of $50, and to loan the sum of $200, and accept as security for said note and money the mortgage given by Patrick J. on the lot in question. The appellant was present and heard the representations and statements so made by the appellee and his brother Thomas to said John O'Connell, Sr. Upon principles of natural justice ought the appellee be now allowed to insist the mortgage given by Patrick J. did not create a lien on the lot for the re-payment of the mortgage debt, and be granted a decree canceling the master's deed based on the mortgage, without the imposition of equitable terms and conditions? The application of the appellee to a court of chancery for a decree for the cancellation of the deed, based upon that mortgage, is subject to the maxim that he who seeks equity must do equity. The jurisdiction of chancery to decree the cancellation of deeds is on the ground it is against conscience for the party holding the deed to retain it or

attempt to enforce it against the complainant.  Speaking with reference to applications to courts of equity for the rescission, cancellation and delivery up of deeds, agreements, etc., Mr. Story, in his work on Equity Jurisprudence, (vol. 2, sec. 639,) says: "The application to a court of equity for either of these purposes is not, strictly speaking, a matter of absolute right, upon which the court is bound to pass a final decree, but it is a matter of sound discretion, to be exercised by the court either in granting or in refusing the relief prayed, according to its own notion of what is reasonable and proper under all the circumstances of the particular case. * * * And in all cases of this sort, where the interposition of a court of equity is sought, the court will, in granting relief, impose such terms upon the party as it deems the real justice of the case to require, and if the plaintiff refuses to comply with such terms his bill will be dismissed.  The maxim is here emphatically applied, he who seeks equity must do equity."

In the determination of the application of the appellee for a decree of a court of chancery canceling the deed made by the master to the appellant, it should be considered that the deed is an outgrowth of the mortgage from his brother Patrick J., which the appellee induced to be accepted as constituting a valid lien on the true title to the lot in question, and it should be held the deed relates back to the mortgage, and that it should not be canceled at the instance of appellee except on condition that the appellee should pay to the appellant the sum of money intended to be secured by the mortgage, namely, $250, together with interest thereon at the legal rate from the date of the execution of the mortgage, and that in default of such payment his bill should be dismissed.

The decree is reversed and the cause remanded, with directions to take such further proceedings in the cause as may be consistent with the views herein expressed.

*Reversed and remanded.*