James M. Ellis and Abbie B. Ellis, Appellees, v.
U. G. Orendorff, Appellant.

Gen. No. 8,099.

56

Opinion filed January 25, 1928.

GLENN RATCLIFF, for appellant.

CLAUDE E. CHIPERFIELD, BURNETT M. CHIPERFIELD and ROBERT B. CHIPERFIELD, for appellees.

MR. PRESIDING JUSTICE SHURTLEFF delivered the opinion of the court.

Appellees filed their bill in equity in the circuit court of Fulton county to restrain appellant from prosecuting his suit in ejectment in the same court to establish title in fee in appellees and to recover possession of 160 acres of land, conveyed by warranty deed by appellees to appellant on June 2, 1922, to have the said deed construed as a mortgage, securing certain indebtedness owing by appellees to appellant, and praying for an accounting and general relief.

It appears from the bill, answer and proofs in the record that prior to June 2, 1922, appellee James M. Ellis and his brother owned the farm together, and that on February 28, 1921, appellee Ellis wrote to appellant as follows: "I received your letter yesterday in regard to who is interested in the farm. Just John and me. Us two own the farm individually. We owe $3000 at Peoria, $2000 at Plattenburg. John offers me his share of everything, farm stock, and all, for $6000. I owe some at Canton. I wanted to put it all in one mortgage to one man. I don't want the drainage. $13500.00 will buy John out and take up the other two mortgages and put the loan to one man."

The record leaves a doubt as to whether appellant sought the opportunity to aid appellees, or whether appellee Ellis first applied to appellant for assistance. It is not important. The lands in question bordered upon Rice Lake, an arm or affluent of the Illinois River. About one-half of the farm was low, wet and swampy land and the balance was upland and tillable. The appellees had resided upon the lands for a great many years. Appellant had gathered together 1,500

to 2,000 acres of adjacent lands, upon which he had constructed a clubhouse and the lands were used for a private hunting ground and fishing preserve. The witnesses Amos Beebe and Elizabeth Beebe, his wife, who was a sister of appellee James M. Ellis, had had charge of appellant's clubhouse. Until the commencement of the ejectment suit there had been certain friendly intimacies between these families.

In the winter of 1921 and 1922 there was a mortgage on the Ellis farm in the amount of $12,500, and it appears that appellee Ellis had a considerable number of debts in various amounts, which were causing him annoyance. There was a series of correspondence between appellee Ellis and appellant, who was then in California, in reference to the debts and a sale or mortgage of the farm, some of which correspondence we shall revert to later. The result was that upon appellant's return from California the debts and liabilities of appellee Ellis were computed, and appellees executed and delivered to appellant a warranty deed of the farm for a stated consideration of $1. Appellant executed and delivered to appellees a contract, agreeing to convey, by quitclaim deed, the said lands to appellees, provided the appellees made the payments and performed the covenants and agreements later set forth in the contract. The contract provided: "The parties of the second part (appellees) covenant and agree to pay to said party of the first part the sum of $20,250 one year after date, with interest at the rate of seven per cent per annum, payable semi-annually, and all taxes, assessments or impositions that may be legally levied or imposed on said lands subsequent to the year 1921, and in case of their failure this contract shall, at the option of the first party, be forfeited and determined, and first party shall have the right to re-enter and take possession," etc.

Appellees did not pay the semi-annual interest provided for in the contract, except that it may have been

shown that appellees delivered a small quantity of corn to appellant in the fall of 1922, amounting to less than $100 in value, and did not pay anything upon the principal of said contract, so that on November 10, 1923, appellant, by written notice served, demanded the immediate possession of the premises, and on November 26, 1923, commenced his ejectment suit, returnable to the January term, 1924, of said court.

Appellees' bill alleges that said warranty deed was executed and delivered by way of a mortgage, to secure advancements that were to be made by appellant to appellees, in the sum of $20,250, for the period of five years, and that appellant had never paid any moneys to appellees in pursuance of said security, or made any advancements in any sum whatever to appellees. The bill then sets out a statement made by appellant to appellees, purporting to show the indebtedness of appellees to appellant, "as of date May 1st, 1923," amounting to the sum of $30,337.02, and charges various acts on the part of appellant such as posting upon the land notices—"Private Property," "No Trespassing Under Penalty—U. G. Orendorff, Owner," and sets out a lease which is shown under date of about June 2, 1923, by which appellant assumed to be the owner in fee of said lands. The bill charges other acts and fraudulent and oppressive conduct by which appellant had sought to dispossess appellees of their rights in said lands, and charged that appellant, as a part of a plan, had asserted that he was the owner of the premises and proclaimed the same publicly, so that the same had resulted in slandering the title of appellees and they had lost several opportunities to sell said lands and pay whatever debts they did owe, not only to the appellant but to other persons. The bill set out the deed and contract and charged that appellees owned no other property, except the small amount of personal property necessary to carry on said farm. The bill charged that appellant "did

not furnish to or on behalf of the complainants, or either of them, the sum of $20,250, although these complainants aver that he did discharge some indebtedness which was due and owing by the said James M. Ellis, but to whom said payments were made or the amount of such payments are to these complainants unknown.'' The body of the bill charges ''that the defendant be required to render a true and accurate account of any and all sums paid out by him for the complainants or either of them, in order that the complainants may be advised and informed of such amount, and that the court may thereupon determine to what, if any, extent these complainants are liable to the defendant by reason of such payment, and these complainants aver that they will pay to the defendant such sums as this court shall determine are fairly, legally and equitably due the said defendant.''

The bill prays that the deed be determined to be a mortgage to secure the payment of such sums of money as have properly and rightly been advanced and paid to the complainants by defendant. The bill further prays that an accounting be had and for general relief.

Appellant answered the bill, admitting certain allegations to be true, but denying all of the allegations as to fraud and oppressive conduct, and avers that in pursuance of said deed and contract and at the request of appellees appellant paid off over $30,000 of indebtedness owing by said appellees, including the mortgage on said lands for and on behalf of appellees. The original answer filed denied that said deed was given as security, but averred that it conveyed the title in fee of said lands to appellant. Upon exceptions being made to the answer, which were sustained by the court, appellant amended his answer, in which amended answer appellant reiterates ''that it was the intention and understanding of *this defendant* that the same was to be treated as an absolute sale and con-

veyance of the real estate therein described, with an option on the part of the complainants to repurchase said lands upon the payment of the sum of twenty thousand and two hundred fifty dollars, within the time specified in said contract and upon the terms therein set forth. "Further answering this defendant says that he is now advised by his solicitors that the legal effect of said transactions would constitute said deed and contract as a security for the money advanced by this defendant for the complainants in the nature of a mortgage, and in case the court should find that said deed and contract should be treated as security for said indebtedness, then this defendant asks that the court, without delay ascertain the amount of money due from the complainants to this defendant, and order that the same be paid by the complainants to this defendant by a short day fixed by the court, and *this defendant avers that he is willing to accept payment of the amount of money so advanced by him, for the complainants with interest thereon under and by virtue of said deed and contract and release to the complainants any interest he may have in the lands described in said deed and contract.*"

Appellees then withdrew the special prayer of their bill praying an accounting, filed a replication and the cause was referred to the master in chancery to take the proofs and report his findings of law and fact. The proofs were heard, the master reported and the court found by its decree, after overruling various exceptions by appellant, that said deed and contract constituted a mortgage security for certain advancements made by appellant for and on behalf of and at the request of appellees, amounting to the sum of $21,510.99. The master's report and the decree itemize the amounts, the persons to whom paid and the purpose of and date of payment. It was further found and decreed that by the act of the parties said indebtedness was made to mature one year from June 2,

1922. Over the exception of appellant, the court refused to allow interest upon said sums.

It was further decreed that it was the duty of appellant to credit appellee James M. Ellis for whatever sum of money has been or may be collected by said appellant on a policy of insurance held by appellant upon the buildings on said premises, for a loss by fire which had occurred, as set forth in the master's report. The decree also perpetually enjoined appellant, his agents, servants and attorneys from taking or attempting to take possession of said lands, and from in any way exercising any acts of ownership with reference to said premises, and from going into or upon said premises for the purpse of disturbing the possession of the owner thereof—James M. Ellis—or from in any way doing any other act in connection with the said premises, or any part thereof, which in any way interferes with the occupancy of the said James M. Ellis and Abbie B. Ellis, and from further prosecuting at law the said suit of ejectment. The court did, however, reserve to appellant the right, "permitting the said Orendorff in such manner as may be lawful and appropriate, to foreclose upon the said deed so given as a mortgage, in such proper tribunal as he may select, and to take any and all lawful action in connection therewith." The court decreed the costs be taxed to the appellant. The appellant was not permitted at the close of the case to file a cross-bill, which was held to be appellant's only method of obtaining affirmative relief. The master refused to recommend and the court to decree payment of an item of $2,056.24 for drainage assessments of the Wakonda Drainage District, for the want of sufficient proofs. Objections taken before the master were made exceptions before the court, and appellant has brought the record to this court for review. Appellees do not except to the decree of the court below and have not appealed.

Counsel have argued this case upon the theory that the main contention of fact was whether the deed given was intended as a mortgage. This contention does not seem to be borne out by the record. Appellees had the right at any time after the amendment to the answer was filed to take a decree on bill and answer, declaring the transaction a mortgage security. The court below refused to allow interest upon the items for which it was found the deed was given as security, amounting to the sum of $21,510.99. The decree found that said items and sum were properly and rightfully paid out and advanced by appellant for appellees, by virtue of said security, and no reason is advanced why the said items should not draw interest from the date of advancement, as found in the decree, at the rate of 7 per cent per annum, as covenanted in the contract. This was error and interest should be added to and computed on each item from the date of its payment or advancement, at the rate of 7 per cent per annum upon the principal sum mentioned in said contract, to the amount of $20,250.

Appellant presented the formal receipt of J. J. McNally, treasurer of the Wakonda Drainage and Levee District, showing or tending to show that appellant had paid the sum of $2,056.24 on May 1, 1923, for 25 per cent of the special assessment tax for the year 1922 on said lands for the benefit of said drainage and levee district. Appellant offered the original receipt, asked that a copy be made and attached to the record, and that the original be returned to appellant for his files. Appellees objected ''as incompetent, immaterial and irrelevant, and that no proper foundation has been laid, and it does not tend to prove any of the issues of the case, and further object to the original being withdrawn from the files.'' The court refused to allow this item and held that it was not secured by said mortgage, ''there being no satisfactory proof of the levying, legality and validity of said assessment.'' It

is now insisted by appellees that the pretended receipt in the original bill of exceptions on file in the circuit clerk's office of Fulton county is a typewritten copy and that the record shows no order permitting appellant to withdraw the original receipt. The original bill of exceptions is not before us, and appellees do not appear to have objected to the offer in evidence on the ground that it was not an original and genuine receipt. It is further insisted that appellant should have proven a legal and lawful assessment by the record. We do not think that the authorities so hold.

In *Schlencker v. Risley,* 3 Scam. (4 Ill.) 483, 486, it is held: "The general rule of law is, when an officer justifies an act complained of, purporting to be done in his official capacity, that it is necessary that he should aver and prove, in his defense, not only that he was an acting officer, but that he was an officer in truth and right, duly commissioned and qualified to act as such; while as to all others, it is sufficient for them to aver and prove that he was acting as such officer. And the reason of the rule is that the officer himself is bound to know whether he is legally an officer, and if he attempts to exercise the duties of an officer, without authority, he acts at his peril; whereas it is sufficient, so far as the rights of third persons or the public are concerned, that the officer is acting in his official capacity, and under color of title; for it would be unreasonable and oppressive, to compel them, before they put faith in his official acts, to go into a minute examination of all of the evidence of his title to the office, and see that he has complied with all the necessary forms of law." *People v. Collins,* 7 Johns., 549.

In *People v. Ammons,* 5 Gilm. (10 Ill.) 105, 107, the court held: "There is no law making the certificate of the County Commissioner's Clerk the only evidence of the official character of the person professing to act as Probate Justice. We have no doubt it was com-

petent to prove he was such Justice by parol, when the question arose between third persons, and that in such a case such proof is just as satisfactory as the Clerk's certificate. The proof offered would have shown that he was an officer *de facto,* and as such his acts were as binding and valid, when the interests of third persons or the public were concerned, as if he had been an officer *de jure. The People v. Collins,* 7 Johns., 548; *McIntyre v. Turney,* 9 do. 135; *Berryman v. Muse,* 4 T. R. 366; *Gilliam v. Reddick,* Iredell, 355; *Fowler v. Bebee,* 9 Mass. 331; *Lowell v. Flint,* 20 Maine, (7 Shepley,) 404; and in this Court, *Schlencker v. Risley,* 3 Scam. 485. Had the question arisen directly in a suit against the Justice and his right to the office involved, the rule would have been different.''

Following these rulings the court has held that a special assessment is entitled to the same presumptions as to its legality as any other tax levied by law. *Hurd v. People,* 221 Ill. 398, 402; and *Aldridge v. Matthews,* 257 Ill. 202, 207.

It would appear from the authorities that the production of the original tax receipt made out a prima facie case as to the payment of the tax. *Hinchman v. Whetstone,* 23 Ill. 185; *Bacon v. Peoria & E. Ry. Co.,* 162 Ill. App. 162, 165; *Brockway v. McClun,* 243 Ill. 196, 198. In *Bacon v. Peoria & E. Ry. Co., supra,* the court held: ''The evidence admitted by the court over objections of defendant consisted of certain tax receipts offered by plaintiffs showing the payment of taxes for the last twenty-five years or more. Defendant insists that there was no proof that the party signing these receipts was a tax collector or that the taxes were paid by the parties named in the receipts. While this may have been the rule of evidence in common law the statute now provides that these receipts shall be admissible as evidence and be *prima facie* evidence that the taxes were paid by the parties therein named. *Stacey v. Randall,* 17 Ill. 466; section 163,

page 103, Rev. Statutes, 1874; *Walcott v. Gibbs,* 97 Ill. 118." Indeed, under the authorities, the payment of the tax may be shown by parol. *Hinchman v. Whetstone, supra.*

*City of Chicago v. Middlebrooke,* 143 Ill. 265, 268, cited by appellees, is not applicable to the facts in this case for reasons too numerous to go into. But appellant insists that the payment of these drainage assessments is an immaterial issue in this case and that the question is not raised by the pleadings. As to the first contention, the record shows that the lands were conveyed by warranty deed by appellees to appellant on June 2, 1922, free and clear of all incumbrances. Under appellant's contract to reconvey made on the same date, at the end of one year it was stipulated that the conveyance should be subject to any drainage assessments and other taxes that may have been levied or imposed against said land. This contract was signed by appellees. It is a fair inference that the drainage assessments were levied after the execution of the deed. In any event, the terms of the deed and contract rendered the assessments the indebtedness of appellees. The record is full of references to this drainage matter, which added about $8,000 additional indebtedness against the land. Under date of February 15, 1921, appellant wrote appellees: "It looks very much as though the drainage proposition would go through," and under date of February 28, 1921, James M. Ellis replied: "I don't want the drainage." Appellee James M. Ellis testified: "I never had any conversation on the subject of paying the Wakonda Drainage District tax. I never requested or authorized him to pay it." Appellees produced a witness, John Beckstead, who testified: "The drainage assessment had been spread against it. In 1922 the drainage assessment had been spread on the Ellis lands. In 1922 lands in the Wakonda District were selling between $50 and $75 an acre. People

were wanting to get out of the drainage. I sold to get out of the drainage.'' Beckstead had testified for appellees that at the time of the trial lands in the lake district were of the value of $300 per acre.

Appellees are in the position in a court of equity of desiring to force the appellant to pay the drainage assessments against the land, amounting to about $8,000, and then charge appellant $300 per acre for lands which before the drainage were worth only $50 to $75 per acre, and which appellees and their neighbors were trying to sell at that price to avoid the drainage assessments. This is not equity. As to the contention that the item was not covered by the bill and answer and was not properly one of the issues in the case, it is sufficient answer to say that the court below did undertake to render an account between the parties in connection with said lands, and that every item of indebtedness due to either and covered by said contract should have been included in said accounting. It was not necessary that appellant should have filed a cross-bill to obtain a decree in his favor on such accounting. *Wilcoxon v. Wilcoxon,* 199 Ill. 244, 250; *Thomas v. Turner,* 157 Ill. App. 16, 21; *House v. John Linn & Co.,* 179 Ill. App. 114, 115; *Clinton v. Winnard,* 135 Ill. App. 274, 278. The fact that appellees withdrew their special prayer for an accounting in no wise changed the issues in the case. The whole tenor of appellee's bill of complaint demanded an accounting, and that relief was comprehended in the prayer for general relief. Appellant paid the special assessment on May 1, 1923, to the amount of $2,056.24, at a time when it was a lien upon the land, and appellees, under the statute, were in default and the decree should be modified to allow appellant the amount of such payment, with interest at the rate of 5 per cent per annum from the date of such payment.

Appellant assigns error upon said decree in that it perpetually enjoins him from doing any act or at-

tempting to take possession of said lands, as set out, and from prosecuting said ejectment suit. In defense of this portion of the decree appellees contend that the main issue in the case was whether appellant held the title to the lands in fee or by way of a mortgage security. We do not so read the record as a matter of fact, but this would not obviate the assignment of error. Appellees' bill alleged that the deed was intended to be a mortgage, and averred their willingness to pay the appellant such sums as the court should determine were fairly, legally and equitably due appellant. In other words, the bill offered to do equity on the part of the complainants. The decree does not do equity.

The law is that where a party seeks in a court of equity to divest another of legal title to lands, the court will impose equitable terms on which the relief will be granted, and if there is a debt due, which the legal title was given to secure, the court will require its payment as a condition precedent to the relief prayed. (*O'Connell v. O'Conor*, 191 Ill. 215, 224; *Galbraith v. Tracy*, 153 Ill. 54, 64; *St. Patrick's Catholic Church v. Daly*, 116 Ill. 76, 82; *Carpenter v. Plagge*, 192 Ill. 82, 97; *Springfield & N. E. Traction Co. v. Warrick*, 249 Ill. 470, 476; *Shrontz v. Thyfault*, 231 Ill. App. 228, 232; *De Walsh v. Braman*, 160 Ill. 415, 422.)

Where the debt is due, the proper decree to enter in such cases is to allow the parties to redeem from a conveyance which is held as a mortgage, upon payment of the sum found to be due, within a reasonable time to be fixed by the decree, with costs, and directing the mortgagors to discharge the mortgage—or to convey the property to the complainants, if the defendant holds a deed instead of a mortgage as security—on the payment of the money, and that, in default of such payment within the time specified, the bill be dismissed. (*Carpenter v. Plagge, supra,* p. 100; *Chicago & C. Rolling Mill Co. v. Scully*, 141 Ill. 408, 418; *Henderson v. Kibbie*, 211 Ill. 556, 567; *De Walsh v. Bra-*

*man, supra; Bremer v. Calumet & C. Canal & Dock Co.,*
127 Ill. 464, 491; *O'Connell v. O'Conor, supra,* p. 224;
*Decker v. Patton,* 120 Ill. 464, 468; *Massachusetts Mut.
Life Ins. Co. v. Boggs,* 121 Ill. 119, 127.) The decree
contained no such provision, was inequitable in that re-
spect, and it follows that all that part of the decree
providing for an injunction restraining appellant from
"taking or attempting to take possession of said lands
and from in any way exercising any acts of owner-
ship with reference to said premises and from going
into or upon said premises for the purpose of disturb-
ing the possession of the owner thereof, James M.
Ellis, or from in any way doing any other act in con-
nection with the said premises or any part thereof,
which in any way interferes with the occupancy of the
said James M. Ellis and Abbie B. Ellis," should be
eliminated and stricken from the decree, for the rea-
son that no such acts were proven by the record to
have been committed by appellant in pursuance of the
deed, as a deed in fee, inconsistent with appellant's
rights, under the contract and deed, construed as a
mortgage. The prosecution of the ejectment suit hav-
ing been brought by appellant, claiming title in fee
to the lands should be enjoined. It is contended by
appellant that he has and has had, under the mortgage
indebtedness and the deed construed as a mortgage,
since June 2, 1923, and after condition broken the
right to bring ejectment to recover possession of said
lands, as a mortgagee, under the rule laid down in
*Esker v. Heffernan,* 159 Ill. 38, 42; *Ware v. Schintz,*
190 Ill. 189, 193; *Kransz v. Uedelhofen,* 193 Ill. 477;
*Bradley v. Lightcap,* 201 Ill. 511, 519, and that he may
at the same time prosecute his foreclosure suit in
equity. *Bradley v. Lightcap, supra.* Whatever rights
appellant may have, under the deed and contract, con-
strued as a security, to enforce his mortgage debt, are
to be hereafter determined. It is the opinion of this
court that the ejectment suit pending, having been

brought to recover the fee title to the lands, should be enjoined. After appellant filed the amendment to his answer, there was no occasion for further litigation in this case, as to the question of said deed constituting a mortgage, by way of security, to which subject we shall again refer.

In *Carpenter v. Plagge,* 192 Ill. 82, 95, it is held: "If a person, entitled to redeem, goes into equity for that purpose, and he owes the mortgagee other sums than that secured by the mortgage, relief will be granted only on the payment of the total amount of his indebtedness, in accordance with the maxim that 'he who asks equity must do equity,' and to prevent circuity of action,'' citing numerous authorities.

While the bill presented is not strictly a bill to redeem, under the authority of *Carpenter v. Plagge, supra,* and the other cases cited, the decree should provide that the indebtedness found to be owing by appellees, to appellant, under the terms of the deed and contract, amounting to the sum of $21,510.99, including interest thereon, on the sum of $20,250, computed on each item from the date of its payment at the rate of 7 per cent per annum and including said payment for drainage taxes amounting to the sum of $2,056.24, with interest thereon at the rate of 5 per cent per annum from the date of the payment of said tax, should be fixed and determined by the decree, and the appellees should be adjudged to be in default and ordered to pay said sum and sums to the appellant within 90 days from the entry of the remanding order in this cause. In default of such payments, however, the bill in this cause should be dismissed for want of equity.

Appellees made the issue in the bill of complaint that it was the agreement and understanding of the parties that said mortgage indebtedness should run for a period of five years from June 2, 1922, which was denied by appellant who contended that the terms of

the contract were controlling upon that question. This issue was submitted to the master, who made no recommendation upon it, and upon that question was based one of the exceptions before the chancellor upon the master's report.

The exceptions before the chancellor were argued on October 15, 1926, and the cause was submitted to and taken under advisement by him. On January 22, 1927, the chancellor passed upon the exceptions and found that under the terms of the contract the amount of said advancements became due one year after the making of said contract and entered a decree.

It was error in the decree to order appellant to credit the complainant James M. Ellis for whatever sum of money has been or may be collected by appellant on the policy of insurance set out in the decree. In the proofs it was shown that appellant and appellee James M. Ellis each claimed the fund, and that it had never been paid to either of them. It will be in sufficient time to direct the application of this fund whenever it is in the hands of some person over whom the court has jurisdiction.

Appellant complains because the costs in the court below were taxed to appellant, and assigns error. This assignment of error involves very much the merits of the entire controversy. That appellant was strongly interested in purchasing the lands in question and attaching them to his preserve is beyond question, and he frankly so testifies. That appellant was more than generous in his desire to aid appellees was, without doubt, largely prompted by the desire to secure the title of these lands. That he believed that the deed in question gave him good title to the lands unless appellees repurchased within the year, we have no question. Appellees, also, were not lacking in guile. Appellee Ellis wrote appellant as late as March 24, 1922: "There is two more tracts of land joins me I think you can buy right, if you want to. John is still here

watching the lake to see that it don't run away."
What does he mean by the word "more" unless he re-
fers to his own tract? Under date of February 27, 1922,
Ellis wrote appellant and made out a list of his total
indebtedness and stated that all he owed was $18,019,
and said: "If you want to take a second mortgage for
the balance, say $6,000 (above mortgage of $12,500),
for four years, they would both come due the same
time. Then if I get ahead and can pay out all right.
If not, I could sell the farm to you. I think some fel-
lows at Galesburg and a bunch at Kingston want to
buy the farm. I will want to talk with you before I
try to sell. There are several fellows here who have
done all the dirt they could, thought they could run me
out. Now they will never get it, if me and you can
deal. I will sell to someone else before they shall run
me out, and if I can deal with you, we will head them
off."

On February 16, 1922, Ellis writes that he is in
debt about $17,000 and will sell for $26,000 and says:
"I am going to sell out the farm of 160 acres. I am
writing to you first. We will give you the first chance
at it." On March 14, 1922, Ellis again writes ap-
pellant: "I got all my business affairs fixed up, and
when you come back come down and we will talk
things over. I want to get all my money matters in
one person's hands. I can go ahead and make money
better." We have already set out one of the most
violent intrusions charged by appellees—that appellant
nailed up signs warning trespassers to keep off from
the farm and signed by appellant as owner. Ellis
states further in this letter of March 14th: "Since I
put up them signs you gave me there has not been one
car come in here hunting. I told everybody you leased
my hunting ground." This softens some of the sting
from appellees' charge of violence.

Appellees made different statements to appellant as
to the amount of their indebtedness varying in amount,

and their testimony is especially corroborative of the testimony of the witness Beckstead, whom they vouched for, that "people were wanting to get out of the drainage in 1922," and the neighborhood has met with varying success.

Appellees, by bill and by testimony, urged that appellant never advanced to them or for them any of the principal of the loan named in said contract, and that the loan was to extend for a period of five years. On both issues appellees were defeated.

As to the costs, appellant should pay the costs up to the filing of the amendment to his answer, and as an accounting between these parties, growing out of the nature of their transactions and the attitude of each, became necessary, the costs in the lower court should be apportioned equally between appellant and appellees. The costs in this court should be taxed to appellees.

For the reasons stated, the decree of the circuit court of Fulton county is reversed and the cause remanded, with directions to modify the decree to conform to the views expressed in this opinion, and to enter a decree finding that the appellees are indebted to the appellant, under the terms of the said deed and contract in the sum of $21,510.99, including interest thereon, on the sum of $20,250, computed on each item from the date of its payment, at the rate of 7 per cent per annum and in addition thereto, including said payment for drainage taxes, amounting to the sum of $2,056.24, with interest thereon at the rate of 5 per cent per annum from the date of the payment of said tax, and said interest to be computed to the date of said decree to be entered on the remanding order herein, and that by the terms of said decree, the appellees, complainants in said bill of complaint, be decreed to be in default, in the payment of said sums, and that, upon the failure of said appellees, complainants in said bill of complaint, to pay said sum and sums to the appel-

lant, defendant, within 90 days from the entry of said decree, then that appellee's said bill of complaint be dismissed for want of equity.

*Reversed in part and affirmed in part, and remanded with directions.*